IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| TRACEY L. FREEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 315-003 |
| | ) | |
| WILLIAM DANFORTH, Warden; | ) | |
| DR. STEVENS, Augusta State Medical | ) | |
| Prison; WARDEN TOBY, | ) | |
| Warden of Security; LT. BEASLEY; | ) | |
| OFFICER POUNDS; GORDON EVANS, | ) | |
| Inmate; FNU STYLES, Inmate; and FNU | ) | |
| RACHETT, Inmate, | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at Ware State Prison in Waycross, Georgia, brings the above-captioned case pursuant to 42 U.S.C. § 1983, concerning events alleged to have occurred primarily at Telfair State Prison ("TSP") in Helena, Georgia. Because he is proceeding *in forma pauperis*, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006).

**I. SCREENING OF THE COMPLAINT**

    **A. BACKGROUND**

Plaintiff names the following Defendants: (1) William Danforth, the warden at TSP; (2) Dr. Stevens, a surgeon at Augusta State Medical Prison; (3) Ms. Toby, a warden of security at TSP; (4) Lt. Beasley, a correctional officer at TSP; (5) Officer Pounds, a correctional officer at

TSP; (6) Gordon Evans, a prisoner at TSP; (7) Inmate Styles, a prisoner at TSP; and (8) Inmate Rachett, a prisoner at TSP. (See doc. no. 1, pp. 1, 4.) Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On March 21, 2014, Defendants Evans, Styles, and Rachett assaulted Plaintiff at TSP because they thought he had informed prison officials about contraband discovered in a prisoner's cell. (Id. at 5.) After the assault, these three Defendants told Plaintiff he had to leave the dormitory because he was a snitch. (Id. at 6.) When Plaintiff went to the front of the dormitory to ask to leave, Defendant Pounds told Plaintiff he knew Plaintiff had been labeled a snitch, but he did not request a move out of the dormitory for Plaintiff because he did not think the inmates who had labeled Plaintiff a snitch were serious about assaulting him. (Id.) Defendants Beasley and Toby apologized to Plaintiff for the assault because they had conducted a surprise inspection that uncovered the contraband, but the other inmates "got the impression" that Plaintiff had informed the administration about the location of the contraband. (Id. at 7.) Dr. Stevens provided Plaintiff treatment after the assault. (Id. at 6.) Plaintiff seeks monetary damages for his injuries, and he wants criminal charges brought against the inmates who assaulted him. (Id. at 8.)

As to the prison grievance procedure, Plaintiff states that he "wrote a statement and I wrote a grievance." (Id. at 3.) The grievance and appeal were rejected "due to attempt to present multiple issues." (Id. at 3, 4.)

**B.     DISCUSSION**

Plaintiff's complaint should be dismissed because of his failure to exhaust administrative remedies. Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until

such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Dismissal for failure to state a claim is appropriate if it is clear from the face of a complaint that the plaintiff failed to exhaust administrative remedies. See Jones v. Bock, 549 U.S. 199, 215 (2007); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011); Solliday v. Federal Officers, 413 F. App'x 206, 208 (11th Cir. 2011); Anderson v. Donald, 261 F. App'x 254, 256 (11th Cir. 2008). The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).[1] Finally, under the PLRA, the

---

[1] Other federal circuits have similarly held that the PLRA does not allow a plaintiff to exhaust administrative remedies while his case is pending. See McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999); Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 537-38 (7th Cir. 1999).

3

Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

The administrative grievance procedure applicable in this case is governed by the DOC's Standard Operating Procedure ("SOP") IIB05-0001. Inmates are encouraged to resolve complaints on an informal basis before filing a grievance, however this step is not required. SOP IIB05-0001 § VI(A)(4). The administrative remedies procedure commences with the filing of the Original Grievance. The inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the Original Grievance and give it to a Counselor. Id. § VI(D)(1)-(5). "The complaint on the Grievance Form must be a single issue/incident." Id. § VI(D)(2). Once the Counselor gives the grievance to the Grievance Coordinator, they will screen it in order to determine whether to accept it or recommend that the Warden reject it. Id. § VI(D)(5). If the Warden rejects the grievance, the inmate may appeal the rejection to the Central Office. Id. § VI(D)(5)(f).

If the Grievance Coordinator accepts the grievance or the Warden rejects the coordinator's recommendation to reject the grievance, the Grievance Coordinator will appoint a staff member to investigate the complaint. Id. § VI(D)(6). After the staff member prepares a report, the Grievance Coordinator submits a recommended response to the Warden. Id. The Warden or a designee reviews the grievance, the report, and the recommendation and issues a decision in writing. Id. The Warden has forty days from the date the offender gave the Original Grievance to the Counselor to deliver a decision. Id. § VI(D)(7).

The inmate then has seven calendar days from the date he receives the response to file a Central Office Appeal to the Office of the Commissioner, but this time limit may be waived for good cause. Id. § VI(E)(2). If the Original Grievance is rejected, or if the time allowed for a response to the Original Grievance has expired without action, the offender may file a Central Office Appeal. Id. §§ VI(E)(3)-(4). The Office of the Commissioner or his designee then has 100 calendar days after receipt of the grievance appeal to deliver a decision to the offender. Id. § VI(E)(7).

Here, Plaintiff concedes that he did not comply with the procedural requirements of administrative grievance process because he states that his grievance and appeal were rejected "due to attempt to present multiple issues." (Doc. no.1, pp. 3, 4.) The SOP specifically provides that the complaint in a grievance "must be a single issue/incident." SOP IIB05-0001 § VI(D)(2). The Supreme Court has explained the rationale behind requiring "proper exhaustion" as follows:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . . For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

Woodford, 548 U.S. at 95.

In sum, the PLRA requires proper exhaustion of available administrative remedies prior to filing a federal lawsuit, which includes a requirement for compliance with procedural rules governing prisoner grievances. Johnson, 418 F.3d at 1159. Additionally, because proper

5

exhaustion of administrative remedies is a "precondition" to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure *before* initiating this suit. Higginbottom, 223 F.3d at 1261. Plaintiff concedes that he failed to properly exhaust his available administrative remedies because he violated the SOP rule that a grievance address only "a single issue/incident." (Doc. no. 1, pp. 3, 4.) Therefore, the complaint fails to state a claim upon which relief can be granted. See Solliday, 413 F. App'x at 208 ("A claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted.").

## II. CONCLUSION

For the reasons set forth above, Plaintiff's complaint fails to state a claim upon which relief can be granted. Therefore, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's complaint be **DISMISSED** for failure to exhaust administrative remedies and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 15th day of April, 2015, at Augusta, Georgia.

_/s/ Brian K. Epps_
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA